# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUIS J. GERKIN, JR.,<br>　　　Plaintiff | CIVIL ACTION NO.: |
| v. | JUDGE: |
| GENERAL HEALTH SYSTEM AND BATON ROUGE GENERAL MEDICAL CENTER,<br>　　　Defendants. | MAGISTRATE: |

## COMPLAINT AND JURY DEMAND

### I. INTRODUCTION

1. This is an unlawful employment practices case. The plaintiff brings this suit pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq.* ("FMLA") and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12101 *et seq.* ("ADA").

2. The FMLA protects employees who must take workplace leave for a serious health condition.

3. As alleged further below, the defendants interfered with, restrained, and/or denied the plaintiff's exercise of or the attempt to exercise his rights under the FMLA.

4. As alleged further below, the defendants discriminated and retaliated against the plaintiff because he took FMLA-protected leave.

5. The ADA makes it unlawful to intentionally discriminate against a qualified employee on the basis of the person's disability, having a record of a disability, or being regarded as having a disability.

6. As alleged further below, the defendants discriminated and retaliated against the plaintiff because of a disability, because he had a record of a disability, and/or because he was regarded as having a disability.

## II. JURISDICTION

7. The jurisdiction of the Court over this controversy is invoked pursuant to the provisions of 28 U.S.C. § 1331 (federal question jurisdiction).

## III. VENUE

8. The unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the Middle District of Louisiana. Venue, therefore, lies in the United States District Court for the Middle District of Louisiana under 42 U.S.C. § 2000e-5(f)(3). Venue is further proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred within the jurisdiction of the United States District Court for the Middle District of Louisiana.

## IV. PARTIES

9. Plaintiff Louis J. Gerkin, Jr. ("Plaintiff" or "Gerkin") is of the full age of majority and a resident of Livingston Parish, Louisiana.

10. At all material times, Plaintiff was an "eligible employee" under 29 U.S.C. § 2611(2), having (a) worked for at least 12 months for the defendants at the time that his need for FMLA-protected leave arose and (b) worked at least 1,250 hours of service for the defendants during the previous 12-month period.

11. At all material times, Plaintiff was a "qualified individual" under 42 U.S.C. §§12111(8) in that he was an individual who, with or without reasonable accommodation, could perform the essential functions of his employment position.

12. Defendant General Health System ("the System") is a Louisiana corporation domiciled in Baton Rouge, Louisiana. During the time periods relevant to this action, the System was an employer of Plaintiff within the meaning of 29 U.S.C. § 2611(4) and 42 U.S.C. § 12111(5)(A).

13. Baton Rouge General Medical Center ("BRGMC") is a Louisiana corporation domiciled in Baton Rouge, Louisiana. During the time periods relevant to this action, BRGMC was an employer of Plaintiff within the meaning of 29 U.S.C. § 2611(4) and 42 U.S.C. § 12111(5)(A).

14. The System provides management, governance, and administrative services to its subsidiary, BRGMC.

15. The System and BRGMC share common management, including the Chief Executive Officer.

16. Plaintiff alleges that, at all times relevant to this lawsuit, the System and BRGMC were joint employers of Plaintiff in that they possessed the power to hire and fire Plaintiff, they possessed the right to supervise Plaintiff, they possessed the right to set Plaintiff's work schedule, they paid Plaintiff's salary, they withheld Plaintiff's taxes, they provided Plaintiff's benefits, and they set the terms and conditions of Plaintiff's employment.

17. Plaintiff alleges that, at all times relevant to this lawsuit, the System and BRGMC were integrated employers in that, at all times relevant to this lawsuit, they were interrelated in their operations, shared centralized control of labor relations, shared common management, and were under common ownership and/or financial control.

18. The System and BRGMC are referred to collectively as "Defendants" or "the Employer."

## V. STATEMENTS OF FACTS

19. On or around May 16, 2005, the Employer hired Plaintiff. At the time of his termination, Plaintiff had worked for the Employer for over 17 years.

20. At the time the Employer terminated Plaintiff's employment, Plaintiff was a maintenance/facility foreman. Plaintiff's position of maintenance/facility foreman was primarily supervisory in nature with physical work accounting for a small percentage of his job duties.

21. In or around March 2022, Plaintiff requested FMLA leave so that he could have hip replacement surgery. The Employer approved the leave.

22. The Employer provided a Designation Notice under the Family and Medical Leave Act to Plaintiff, which did not attach a list of the essential functions of Plaintiff's position.

23. Plaintiff began his FMLA leave on or around March 31, 2022.

24. While Plaintiff was on FMLA leave, the Employer failed to maintain health-related cancer coverage for Plaintiff by failing to remit premiums. These premiums were paid by the Plaintiff but the Employer did not transmit them to the insurer.

25. Plaintiff's physician provided a doctor's note and released him to return to light duty with the restrictions of no ladders, no heavy lifting, and no squatting. Plaintiff's physician approved a return-to-work date for Plaintiff of May 30, 2022.

26. Plaintiff returned to work on or around May 30, 2022.

27. Approximately seven weeks later, Plaintiff provided the Employer with another note from his doctor. The doctor's note dated July 19, 2022 extended Plaintiff's restrictions of no ladders, no heavy lifting, and no squatting until reassessment at Plaintiff's next doctor's appointment on September 30, 2022.

28. On or around July 20, 2022, Jessica Walker, a Benefits Analyst for the Employer, ("Walker" or "Benefits Analyst Walker") telephoned Plaintiff. Walker told Plaintiff to immediately leave work until he had a clear record with no restrictions. At the time Walker told Plaintiff to leave work, Plaintiff had been back from FMLA leave and working for approximately seven weeks.

29. Also on or around July 20, 2022, Benefits Analyst Walker sent Plaintiff an email as a follow-up to her phone call. Walker's email stated that the Employer was unable to accommodate Plaintiff's restrictions of no ladders, no heavy lifting, and no squatting because these were "essential functions of your job . . . ." Walker's email further stated that the Employer was placing him "back under FMLA/Leave Of Absence." Walker's email further stated that she would be notifying Plaintiff's short-term disability insurer about the Employer's decision.

30. On or around July 20, 2022, Benefits Analyst Walker wrote to Plaintiff's short-term disability insurer, notifying them that the Employer was unable to accommodate his restrictions of no ladders, no heavy lifting, and no squatting as those restrictions were essential functions of his job.

31. Benefits Analyst Walker's statements about Plaintiff's essential job functions to Plaintiff and to the short-term disability insurer were untrue because Plaintiff's job description does not list heavy lifting or squatting as essential job functions.

32. On or around July 27, 2022, Plaintiff emailed Benefits Analyst Walker requesting a copy of his job description and a copy of the Employer's FMLA policy and light duty policy. Plaintiff also asked when the second FMLA leave that Walker had ordered him to take (hereinafter referred to as the "Forced FMLA Leave") would end.

33. On or around July 28, 2022, Benefits Analyst Walker emailed Plaintiff and advised that with regard to the Forced FMLA Leave, "FMLA for job protection will ended [sic] on 8/15/22[.]"

34. In her July 28, 2022 email, Benefits Analyst Walker declined to provide Plaintiff with a job description, claiming she had "computer issues."

35. In her July 28, 2022 email, Benefits Analyst Walker further indicated that the Employer had no access to the Employer's FMLA policies because of "computer/system issues,"

5

stating "[t]his is not GHS policy, this is an Act," a reference to the federal legislation that constitutes the FMLA. Walker told Plaintiff that he had to obtain information about the FMLA from www.dol.gov, the website for the United States Department of Labor. On information and belief, Walker was referring to the policies of defendant General Health System when she used the term "GHS policy."

36. In her July 28, 2022 email, Benefits Analyst Walker further indicated that the Employer had no access to the Employer's light duty policy due to "computer/system issues."

37. On or around July 29, 2022, Plaintiff emailed Benefits Analyst Walker to again request his job description and the Employer's FMLA and light duty policies. Plaintiff explained that job descriptions and the Employer's policies are in paper form, as well as electronic form, and could be readily accessed and provided.

38. In his July 29, 2022 email to Benefits Analyst Walker, Plaintiff further stated (a) that he could do his job, (b) that the Employer's failure to provide his job description was interfering with his ability to discuss the matter with his physician, and (c) that the Employer's failure to provide his job description was interfering with his ability to come back to the Employer regarding possible accommodations.

39. In his July 29, 2022 email to Benefits Analyst Walker, Plaintiff also asked for clarification regarding whether the Employer has an FMLA policy and stated he could not discern what his situation was from www.dol.gov, the United States Department of Labor website.

40. In his July 29, 2022 email to Benefits Analyst Walker, Plaintiff further stated that the Employer's failure to provide him with its light duty policy was interfering with his ability to discuss the matter with his physician and come back to the Employer regarding possible accommodations.

41. In his July 29, 2022 email to Benefits Analyst Walker, Plaintiff also asked whether the Employer was refusing to accommodate and allow him to return when his current restrictions ended on September 30, 2022. Plaintiff noted that Walker had advised that the Forced FMLA Leave would end on August 15, 2022.

42. In his July 29, 2022 email to Benefits Analyst Walker, Plaintiff further stated that he felt he was being pushed out of his job for having used FMLA leave.

43. After not hearing from Benefits Analyst Walker or anyone else representing the Employer, Plaintiff again reached out by email to Walker on or around August 3, 2022 asking for a response.

44. On or around August 4, 2022, Benefits Analyst Walker responded by email stating "[w]e are working on your request." Walker did not attach the requested job description, FMLA policies, or light duty policy to her email.

45. Instead of promptly providing the requested documents, Benefits Analyst Walker waited until Friday afternoon, August 12, 2022 to email Plaintiff his job description. The Forced FMLA Leave was set to run out on Monday, August 15, 2022, the next business day, according to the deadline that Walker had previously provided to Plaintiff.

46. Thus, the Employer effectively ran out the clock on all of Plaintiff's available FMLA leave.

47. Neither Benefits Analyst Walker nor anyone else with the Employer ever provided Plaintiff with the Employer's FMLA policies and light duty policy, which Plaintiff had requested.

48. On or around August 22, 2022, Plaintiff's physician provided a return-to-work note, stating that Plaintiff had been released to full duty, was unable to perform squats as a permanent restriction, and was able to kneel to perform ground level work.

49. On or around August 31, 2022, the Employer directed Plaintiff to attend a phone conference with his supervisor Phillip Roberts, Facilities Director, ("Roberts" or "Director Roberts"), Benefits Analyst Walker, and Louis Champagne, Senior HR Management Consultant, ("Champagne" or "HR Consultant Champagne").

50. During that conference, Plaintiff stated he was ready to go back to work. Plaintiff asked whether the Employer accepted his physician's return-to-work note.

51. During that conference, Director Roberts responded that no determination would be made on that day.

52. During that conference, Director Roberts and Benefits Analyst Walker quizzed Plaintiff regarding whether he could perform hypothetical non-essential job tasks.

53. During that conference, Benefits Analyst Walker opined that if Plaintiff were to kneel rather than squat to perform a task, as Plaintiff's orthopedic doctor permitted Plaintiff to do, this would put Plaintiff in a "bad situation" for his back.

54. At the time of the conference, Benefits Analyst Walker was aware that Plaintiff had a history of back surgeries.

55. At the time of the conference, Plaintiff had no restrictions and no impairment with regard to his back.

56. During that conference, Plaintiff pointed out that he had been performing his job subject to his doctor's restrictions for weeks before the Employer sent him home.

57. During that conference, despite Plaintiff having notes from his doctor releasing him to return to work, no one representing the Employer asked Plaintiff for additional medical documentation or for permission to confer with his doctor, a board-certified orthopedic surgeon, regarding restrictions or his return to work.

58. During that conference and thereafter, no one representing the Employer proposed having a physician of their choosing assess Plaintiff's fitness to do his job.

59. During that conference, Director Roberts said that Plaintiff would probably hear from the Employer by the following week.

60. The following week, Plaintiff did not hear from Director Roberts, Benefits Analyst Walker, HR Consultant Champagne, or any other representative of the Employer regarding his return to work.

61. Plaintiff had to continue to use and ultimately exhaust years of accumulated GPT. On information and belief, GPT stands for "General Purpose Time" and is a type of paid time off program that the Employer's employees accrue.

62. In addition, Plaintiff's short-term disability insurer, Reliance Standard Life Insurance Company ("Reliance"), refused to reopen his file because the Employer had permitted Plaintiff to return to work from FMLA leave from approximately May 30, 2022 to July 20, 2022. Reliance did not believe Plaintiff was disabled.

63. At or around the time of the August 31, 2022 meeting, the Employer terminated Plaintiff's access to his work emails.

64. The Employer's actions and inactions resulted in Plaintiff's termination from employment.

65. On or around September 22, 2022, Plaintiff filed a charge of disability discrimination and retaliation under the ADA with the Equal Employment Opportunity Commission ("EEOC"). In that charge, Plaintiff stated that he believed he had been actually or constructively discharged from employment.

66. After the Employer received notification that Plaintiff had filed an EEOC charge, Benefits Analyst Walker contacted Plaintiff on or around September 26, 2022 to request another meeting.

67. On or around October 12, 2022, Plaintiff met with Benefits Analyst Walker and HR Consultant Champagne. Champagne provided a list of job openings, none of which were equivalent to Plaintiff's former position of maintenance/facility foreman and none of which Plaintiff was qualified for. During the meeting, Champagne specifically discussed with Plaintiff a job titled "Biomedical Technician III," a position unrelated to Plaintiff's former position of maintenance/facility foreman. Plaintiff told Champagne he had no experience in the biomedical technician field and lacked the qualifications for the position.

68. At the meeting on or around October 12, 2022, Plaintiff asked what was stopping him from performing the job of maintenance/facility foreman. HR Consultant Champagne refused to discuss this issue with Plaintiff.

69. At the meeting on or around October 12, 2022, Plaintiff again attempted to discuss with Benefits Analyst Walker and HR Consultant Champagne why the Employer believed he could not perform the job of maintenance/facility foreman. Plaintiff brought handouts from the Job Accommodation Network website to the meeting and asked Walker and Champagne if they had ever looked up ways to accommodate disabled people in performing their jobs. Again, Champagne stated they would not discuss this issue.

70. At the meeting on or around October 12, 2022, Plaintiff asked who in the Employer's Human Resources department could discuss this issue with him, and Champagne stated he would have to find out. Champagne never provided the name of a Human Resources contact with whom Plaintiff could discuss accommodations.

71. At the meeting on or around October 12, 2022, Plaintiff told Benefits Analyst Walker and HR Consultant Champagne that he felt he was being pushed out of his job. Champagne stated that Plaintiff would need to turn in his keys and uniforms and that the Employer was posting the job opening for his prior position of maintenance/facility foreman.

72. On or around October 13, 2022, Plaintiff turned in his badge and uniforms to HR Consultant Champagne as directed. Champagne told Plaintiff that the director overseeing biomedical technicians had confirmed that Plaintiff was not qualified for the position of Biomedical Technician III.

73. On or around October 24, 2022, Plaintiff emailed Benefits Analyst Walker informing her that he had returned his uniforms, badge, and keys as requested. Plaintiff further stated that because the Employer had terminated his employment, he was requesting a COBRA package and separation notice. Plaintiff also requested that the Employer stop charging his credit card for health insurance premiums. The Employer ignored these requests.

74. On or around November 1, 2022, Plaintiff emailed Benefits Analyst Walker reminding her that he had requested a COBRA package, a separation notice, and the cessation of charges to his credit card for health insurance premiums in light of his termination by the Employer. Plaintiff repeated his requests for a COBRA package, a separation notice, and the cessation of charges to his credit card for health insurance premiums.

75. In his email to Benefits Analyst Walker on or around November 1, 2022, Plaintiff also notified Walker that, during a discussion with a Reliance representative, he had become aware of the Employer's efforts to provide false information to Reliance, the short-term disability insurer, that Plaintiff was disabled and not able to perform the essential functions of his job.

76. According to Reliance, the Employer pressured Reliance to pay Plaintiff benefits through October 13, 2022, even though Plaintiff's doctor had released him to return to work. In

reviewing Plaintiff's job description, Reliance discovered that Plaintiff's restriction of squatting was not in his job description. Reliance, therefore, took the position that Plaintiff was able to perform his job duties. Nevertheless, Benefits Analyst Walker claimed that squatting and crouching were the same thing and insisted that Reliance treat Plaintiff as disabled and pay him through October 13, 2022.

77. On information and belief, the Employer pressured Reliance in an effort to support the Employer's position regarding Plaintiff's EEOC charge and to avoid its responsibilities under the FMLA and/or ADA.

78. Plaintiff's job description contains the word "crouching" as a job function. It does not contain the term "squatting." Plaintiff's physician restricted him from squatting, an activity not appearing in his job description.

79. According to Plaintiff's physician, Plaintiff may not perform deep squats with both his hips simultaneously. However, Plaintiff may crouch or perform a single-leg kneel for ground level activities. According to Plaintiff's physician, Plaintiff was able to perform all duties required of him on the job.

80. The Employer did not discuss Plaintiff's restriction of no squatting with his physician. The Employer failed to engage in an individualized assessment of Plaintiff in violation of the ADA. The Employer failed to engage in good faith discussions regarding requested accommodations and failed to accommodate Plaintiff's restrictions.

81. Rather than discuss Plaintiff's restriction of no squatting with his physician or having a physician of the Employer's choosing provide guidance, the Employer, a hospital, conflated the words "squatting" and "crouching" and attempted to support its position with a Google search of those words on sites such as thesaurus.com, merriam-webster.com, and thefreedictionary.com, which are not sources of medical expertise.

82. On or around November 7, 2022, the Employer deposited in the United States Mail a letter bearing the date November 1, 2022 and signed by Benefits Analyst Walker. In that letter, Walker stated that Plaintiff had requested to be voluntarily separated from employment in his October 24, 2022 letter. Walker's statement was false. Plaintiff made no such request.

83. In the Employer's letter dated November 1, 2022, Benefits Analyst Walker further stated that Plaintiff was terminated as of October 27, 2022, that Plaintiff's health benefits coverage would be extended through November 5, 2022, and that the Employer was refusing to refund health insurance premiums because Plaintiff's health insurance coverage was still active.

84. In the Employer's letter dated November 1, 2022, Benefits Analyst Walker attached a Separation Notice provided to the Louisiana Workforce Commission, stating that Plaintiff had resigned/quit and that the reason for his separation was "personal reasons."

85. The reasons the Employer gave for Plaintiff's separation from employment are false and a pretext for discrimination and retaliation.

86. On information and belief, the Employer replaced Plaintiff with a person outside the protected class. Alternatively, the Employer gave Plaintiff's job duties to others outside of the protected class, or otherwise discriminated against Plaintiff.

87. On information and belief, the Employer engaged in a practice of interfering with Plaintiff's and other employees' rights to return to work following legally protected leave.

88. On information and belief, the Employer engaged in a practice of withholding information required to be provided to Plaintiff and other employees and/or requested by employees in connection with their FMLA and/or ADA-related leave.

89. On information and belief, the Employer does not adequately train and manage its supervisors, managers, and Human Resources personnel so as to avoid violations of the FMLA and/or the ADA.

90. On information and belief, this lack of management, supervision, and training includes a lack of consequences for those who break the law under the FMLA and/or the ADA.

91. On information and belief, the Employer has a pattern or practice of violating the FMLA and the ADA when it comes to employees who have a disability and seek to take federally protected medical leave. In other words, the Employer has engaged in conduct similar to that described in this Complaint with respect to other employees who have a disability and seek to take FMLA and/or ADA leave.

## VI. STATEMENT OF CLAIMS

**FIRST CLAIM FOR RELIEF – INTERFERENCE IN VIOLATION OF THE FMLA**

92. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 91, inclusive, herein.

93. Plaintiff was an eligible employee under the FMLA.

94. Plaintiff had a serious health condition under the FMLA.

95. Defendants are subject to the requirements of the FMLA.

96. Plaintiff gave notice of his intention to take FMLA leave.

97. Defendants interfered with, restrained, and/or denied the exercise of or the attempt to exercise Plaintiff's rights under the FMLA, and Plaintiff was prejudiced by this interference.

**SECOND CLAIM FOR RELIEF – RETALIATION IN VIOLATION OF THE FMLA**

98. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 97, inclusive, herein.

99. Plaintiff engaged in protected activity under the FMLA.

100. The Employer took adverse actions against the Plaintiff.

101. The Employer would not have taken adverse actions against Plaintiff but for his engaging in FMLA-protected activity.

102. Any reasons given by Defendants for their actions are pretext for discrimination and retaliation under the FMLA.

103. Plaintiff alleges he was treated less favorably than employee(s) who did not request leave under the FMLA.

**THIRD CLAIM FOR RELIEF – DISCRIMINATION IN VIOLATION OF THE ADA**

104. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 103, inclusive, herein.

105. Plaintiff is a qualified individual with a disability under the ADA. Plaintiff has an orthopedic impairment which substantially limits a major life activity or activities (squatting) and the operation of major bodily function(s), including but limited to the functioning of his musculoskeletal system. Defendants knew Plaintiff had this disability.

106. At the time of his termination, Plaintiff was able to perform all essential functions of his job with or without reasonable accommodation.

107. Defendants failed to engage in an interactive process and individualized assessment regarding Plaintiff's disability. Additionally, Defendants refused to provide a reasonable accommodation for his disability.

108. Plaintiff suffered an adverse employment action because he was constructively and/or actually terminated from employment because of his disability.

109. Plaintiff alleges that Defendants, unlawfully and discriminatorily terminated or constructively terminated his employment on account of his disability or, alternatively on account of his having a record of physical disability, or alternatively on account of being regarded as having a disability, and said action violated the provisions of the ADA.

**FOURTH CLAIM FOR RELIEF – RETALIATION IN VIOLATION OF THE ADA**

110. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 109, inclusive, herein.

111. Plaintiff engaged in protected activity under the ADA.

112. The Employer took adverse actions against Plaintiff.

113. Defendants took adverse actions against Plaintiff on account of his engaging in protected activity.

114. Plaintiff alleges that he has been retaliated against and discharged from employment because of a disability and for seeking to assert his rights under the ADA, or, alternatively, he has been retaliated against and discharged from employment because Defendants regarded him as having a disability, or, alternatively he has been retaliated against and discharged from employment for having a record of a disability, in violation of the ADA.

## VII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

115. Prior to filing this action, Plaintiff timely filed a charge with the EEOC within the appropriate number of days and has received a right to sue letter.

116. Plaintiff has filed this action prior to the expiration of 90 days from the date of receiving his right to sue letter from the EEOC.  Plaintiff has exhausted administrative remedies and prerequisites.

## VIII.  DAMAGES

117. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 116, inclusive herein.

118. The unlawful employment practices complained of in the above paragraphs were intentional.

119. As a direct and proximate consequence of Defendants' unlawful conduct, policies, and practices, Plaintiff is entitled to the following under 29 U.S.C. § 2617: (1) wages, salary, employment benefits, or other compensation; (2) actual monetary losses sustained by Plaintiff as a result of Defendants' violation(s) of the FMLA; (3) interest; (4) equitable relief; (5) attorney's fees and costs, including a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by Defendants; and (6) liquidated damages.

120. Plaintiff specifically pleads his right to liquidated damages under the FMLA. Defendants' violations of the FMLA were not committed in good faith.

121. As a direct and proximate consequence of Defendants' unlawful conduct, policies, and practices, Plaintiff is entitled to the following under the ADA: (1) back pay and front pay; (2) compensatory damages, including emotional distress damages; (3) punitive damages; (4) attorney's fees and costs; and (5) equitable relief.

122. Plaintiff specifically pleads his right to punitive damages under the ADA because Defendants engaged in a discriminatory practice or practices with malice or with reckless indifference to Plaintiff's federally protected rights.

## IX. JURY DEMAND

123. Plaintiff herein demands a trial by jury of all issues in this action that may be tried by jury.

## X. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment as follows:

a. For wages, salary, employment benefits, or other compensation denied or lost to Plaintiff;

b. For actual monetary losses sustained by Plaintiff;

c. For liquidated damages;

d. For compensatory damages, including physical and/or emotional damages, as well as any out-of-pocket expenses;

e. For back pay and front pay;

f. For punitive damages;

g. For attorney's fees and costs, including experts;

h. For pre- and post-judgment interest;

i. For injunctive and other equitable relief as provided by law, including but not limited to ordering appropriate training for Defendants' managers, employees, and Human Resources personnel regarding the FMLA and/or the ADA and prohibiting Defendants from engaging in the unlawful employment practices set forth herein in the future;

j. For such other and further relief as may be just and proper.

Respectfully submitted,

*/s/ Robert B. Landry III*
Robert B. Landry, III  (#18998)
rlandry@landryfirm.com
**ROBERT B. LANDRY III, PLC**
5420 Corporate Boulevard, Suite 303
Baton Rouge, Louisiana  70808
Telephone:     (225) 349-7460
Facsimile:     (225) 349-7466

**COUNSEL FOR PLAINTIFF,
LOUIS J. GERKIN, JR.**